IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| C.R. ENGLAND, INC., a Utah corporation,<br><br>Plaintiff,<br><br><br>vs.<br><br><br>SWIFT TRANSPORTATION COMPANY, a Delaware corporation, SWIFT TRANSPORTATION CO. OF ARIZONA, LLC, a Delaware limited liability company, SWIFT TRANSPORTATION SERVICES, LLC, a Delaware limited liability company, JOHNNY FOWLER, an individual, KEVIN WHITLEY, an individual, ALFONSO RUIZ, an individual, AKIMA BROOKS, an individual, and ANDERSON COMER, an individual,<br><br>Defendants. | MEMORANDUM DECISION<br>AND ORDER<br><br><br><br>Case No. 2:14-CV-781<br><br>Judge Dee Benson |

This matter is before the court on Defendants' Motion for Judgment on the Pleadings and

Request for Attorneys' Fees, Costs and Expenses (Dkt. No. 47), and Plaintiff's Motion to

1

Dismiss all Claims against Johnny Fowler, Kevin Whitley, Alfonso Ruiz, Akima Brooks, and Anderson Comer to Permit Arbitration (Dkt. No. 50). Both motions have been fully briefed and presented to the court in oral argument. After thorough review and consideration of the briefs submitted by the parties and the oral arguments of counsel, the court now enters the following Memorandum Decision and Order.

## BACKGROUND

There is a shortage of long-haul truck drivers in America. Competition is fierce. Accordingly, interstate trucking companies engage in a variety of tactics to find, train, employ and retain new drivers. Typical inducements include free training programs, payments for licenses and signing bonuses. The Plaintiff in this case, C.R. England, Inc. ("England"), is an interstate motor carrier headquartered in Salt Lake City, Utah. It offers a training program to prospective drivers in exchange for which the trainee agrees to a contract with England that obligates the driver to work exclusively for England for a certain time period and thereafter to not compete against England for another time period. Each contract also, at England's insistence, contains an Arbitration Agreement which obligates all disputes between the driver and England to be resolved through binding arbitration. Four such contracts were entered into between England and the four individual defendants in this case (the "Driver Defendants"). The fifth defendant is Swift Transportation Company ("Swift"), which is accused of inducing the four individual Driver Defendants to break their contracts with England so they could drive for Swift.[1]

---

[1]Although England named a fifth driver, Kevin Whitley, in its Complaint, Whitley has not been served. (Defs.' Mot. for J. on Pleadings at 1, n.2.)

Approximately six months before filing the instant case, England had filed a virtually identical lawsuit against Schneider National Carriers, Inc. and four individual drivers.  See C.R. England v. Schneider National, Inc. et al., Civil No. 2:14-cv-674 BSJ.  The drivers in the Schneider lawsuit also had Arbitration Agreements in their contracts with England.  When this fact was brought to England's attention, England agreed to dismiss the case against the individual driver defendants.  See C.R. England v. Schneider National, Inc. et al., Civil No. 2:14-cv-674 BSJ, Dkt. No. 36.

In the instant case, Mr. David Weatherwax and the law firm of Sherman & Howard, Phoenix, Arizona, represent both Swift and the individual Driver Defendants.

This case was filed on October 28, 2014.  Mr. Weatherwax entered his pro hac vice appearance on behalf of all Defendants on December 10, 2014.  Rather than filing Answers, Mr. Weatherwax initially responded to the Complaint with a motion to dismiss on jurisdictional grounds, arguing that there was no diversity jurisdiction because England had named numerous John Does as additional defendants.  (Dkt. No. 22.)

After exchanging briefs on this issue, England agreed to dismiss the John Doe defendants from the Complaint, and the court entered an Order dismissing the Doe defendants.  (Dkt. No. 25, Pl.'s Mem. In Opp'n at 9 ("C.R. England does not oppose the Court dismissing the Doe defendants from the action to resolve the dispute regarding diversity jurisdiction") & Dkt. No. 30, respectively.)

On June 25, 2015, eight months after the case was commenced, Answers were filed by the five defendants.  The Driver Defendants asserted as an affirmative defense that the case

should be dismissed against them because of the exclusive arbitration agreements. (Dkt. Nos. 34, 35, 36 & 37.) In addition to and consistent with the Answers, the initial disclosures, filed on July 13, 2015, by England's counsel, also acknowledged that the individual drivers were asserting that "all claims" against them "must be dismissed" because they are subject to binding arbitration. On July 13, 2015, Mr. Weatherwax had a telephone conversation with England's counsel, Mr. Robert Rice, in which Mr. Weatherwax asked Mr. Rice to send copies of the Driver Defendants' contracts so he could confirm his belief that the contracts contained arbitration agreements. Mr. Rice agreed to do so. Mr. Weatherwax also asked that England voluntarily dismiss the case against the Defendant Drivers because of the arbitration agreements. Mr. Rice said he had no authority at that time to agree to a dismissal but would discuss the matter with his client. Mr. Weatherwax also stated that if there was no voluntary dismissal of the case against the Driver Defendants he would file a motion to dismiss on that basis and he would insist on the payment of attorneys' fees if it came to that.

For the next six weeks, England's counsel made no attempt to contact Mr. Weatherwax.

On August 25, 2015, having received no response to his request for a voluntary dismissal, Mr. Weatherwax filed a Rule 12 (c) motion for judgment on the pleadings with an accompanying memorandum, asserting that judgment should be entered against England, with prejudice, because of the Arbitration Agreements. (Dkt. No. 47.) Upon receipt of the motion, Mr. Rice contacted Mr. Weatherwax and offered to dismiss the case against the Driver Defendants. Mr. Weatherwax said he would stipulate to a dismissal only: (1) if England would agree to pay all attorneys' fees incurred to date in the case or, alternatively, (2) if England would

agree to not seek arbitration against the Defendant Drivers, in which case he would not seek the payment of attorneys' fees.  Mr. Rice was unwilling to accept either of the options and thereafter, on October 2, 2015, filed England's motion to dismiss pursuant to Federal Rule of Civil Procedure 41(a)(2).  (Dkt. No. 50.)  Briefing followed on both motions.  The court heard oral argument on the motions on December 16, 2015, Mr. Weatherwax representing the Driver Defendants and Mr. Rice and Mr. Scott Hagen appearing on behalf of England.

## DISCUSSION

Given the present state of the motions before the court, it is obvious the case against the Defendant Drivers must be dismissed.[2]  The only dispute lies in (1) which motion to grant and (2) whether to award fees.

**1.      The Pending Motions**

A.      England's Rule 41(a)(2) Motion.

England urges the court to grant its motion to dismiss pursuant to Federal Rule of Civil Procedure 41(a)(2), which reads as follows:

Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper.

---

[2]Based on comments made at oral argument, it is clear to the court that England is no longer pursuing its argument that the Driver Defendants have waived their right to arbitrate because they consented to litigate in this action.  Therefore, the court will not address this argument, other than to state that, under the unique circumstances of this case, the court finds no merit in England's position.  To the extent there has been any significant litigation activity taken in this case, other than the Driver Defendants' consistent efforts to dismiss the case because of the Arbitration Agreements, they have not been undertaken by the individual drivers.  The initial motion to dismiss based on the inclusion of John Doe defendants appears to be clearly at the direction of, and for the benefit of, Defendant Swift, not the individual drivers.  Any suggestion that the individual drivers have waived their right to insist on adherence to the Arbitration Agreements is unsupported.

Fed.R.Civ.P. 41(a)(2).

      B.    The Driver Defendants' Rule 12(c) Motion for Judgment on the Pleadings.

The Driver Defendants' motion seeks a judgment on the pleadings pursuant to Rule 12

(c) of the Federal Rules of Civil Procedure.  It states:

> After the pleadings are closed – but early enough not to delay trial – a party may
> move for judgment on the pleadings.

Fed.R.Civ.P. 12 (c).

Under the circumstances, the more appropriate vehicle for dismissing this case against

the Driver Defendants is Rule 41(a)(2).  This allows the plaintiff to dismiss its action against the

drivers and pursue arbitration if it so desires.  The court finds judgment on the pleadings

inappropriate in this case.  Rule 12 (c) is a procedural tool directed at " disposing of cases on the

basis of the underlying substantive merits of the claims and defenses," Bushnell Corp. v. ITT

Corp., 973 F. Supp. 1276, 1281 (D. Kan. 1997), and a dismissal based on the existence of an

exclusive arbitration agreement is not by any reasonable analysis a determination based on the

underlying merits of England's claims against the Drivers.

Accordingly, England's rule 41(a)(2) motion is GRANTED, with prejudice, to permit

arbitration if England so elects.  The Driver Defendants' Rule 12 (c) Motion for Judgment on the

Pleadings is considered MOOT and therefore DENIED.

**2.**    **Fees**

Rule 41(a)(2) allows a plaintiff to dismiss a case "only by court order, on terms the court

considers proper."  Fed.R.Civ.P. 41(a)(2).  England asks for a dismissal order without

conditions.  The Driver Defendants seek to have the dismissal "conditioned on England's

payment of the fees incurred in defending this wrongful action."  (Dkt. No. 56, Driver

Defendants' Reply Brief at 9-10.)

The court agrees with the Driver Defendants that an award of fees is appropriate pursuant

to both the terms of the Driver Defendants' contracts with England and this court's inherent

authority.

First and foremost, it was improper and unfair for England to bring a lawsuit against the

Driver Defendants in federal court when England knew, or should have known, that there were

arbitration agreements in the drivers' contracts.  These contracts, prepared by England, not only

insisted on the arbitration provisions, but made them exclusive and broad enough to cover "all

claims or disputes, whether or not arising out of Employee's employment by the Company, that

the Company may have against the Employee . . . ."  (Dkt. No. 47, Exhibit 1, Mutual Arbitration

Agreement at 1.)  The Agreement also, in language chosen by England, states:

> The Parties recognize that differences may arise between them in the course of the
> employment relationship.  Most disputes can be resolved informally at a personal
> level through discussions between the Employee and the Employee's driver
> manager or other appropriate Company representative.  However, because not all
> disputes can be resolved internally, the Company and the Employee wish to adopt
> a dispute resolution procedure that will avoid the delay, expense and burden of
> litigation in the civil court system.  By entering into this Agreement, both Parties
> intend to gain the advantage of a speedy, economical, impartial and informal
> dispute-resolution procedure.  This Agreement is effective as of the date it is
> signed by the parties.

(Id.)

Furthermore, the Arbitration Agreement requires the arbitration to be "in the driver's

state of residence" and for England "to pay all administrative expenses, all hearing room

expenses, all expenses of AAA representatives and all expenses of any witnesses requested by

the arbitrator."  (<u>Id.</u> at 2-5.)

By bringing this suit, England and its lawyers managed to violate every one of these lofty

goals set forth in a contract England itself drafted:

- The claims England brought against the Driver Defendants were clearly "covered claims" to be decided only in arbitration;

- A federal court lawsuit is obviously the exact opposite of a dispute resolution procedure "that will avoid the delay, expense and burden of litigation in the civil court system," and, as proven by the events to date, hardly constitutes a process designed to "gain the advantage of a speedy, economical , impartial and informal dispute-resolution procedure;"

- A lawsuit in Utah is clearly not "arbitration in the driver's state of residence;" and

- England has not borne any administrative fees and expenses.

In defense of filing the lawsuit, England essentially argues that this type of filing is done

all the time and that parties are free to waive arbitration rights.  While that may or may not be

true in other cases, it is not true in this one where the parties are far from equal.  The difference

in their bargaining positions is vast.  We have a major company in commercial trucking on the

one hand and individual drivers on the other hand.  In this court's view, when a large company

insists on such an arbitration provision in a contract and presents it as an advantage to the

employee the company in all fairness should be bound by the bargain it struck and should not

violate the agreement with impunity by simply filing a lawsuit in federal court without

contacting the employee in advance to see if the driver would be willing to waive arbitration.

At oral argument, England claimed that it wasn't sure at the beginning of the case

whether the four drivers had arbitration agreements, which, under the circumstances is hard to

believe.  However, even if that were the case, one would expect that a quick check of the

company's own records would immediately resolve the uncertainty.  This is especially true in light of the earlier <u>Schneider</u> case which informed England, and the same lawyers, of the identical issue.

If this case had been brought only against the individual Driver Defendants, the court would award all fees incurred for the entire case.  However, the case was not brought only against the drivers; indeed, the main focus of the case appears to be Swift, and the drivers are, so to speak, no pun intended, just along for the ride.  It is undisputed that Mr. Weatherwax was hired by Swift to represent Swift as well as the Defendant Drivers.  These facts affect the court's analysis.  Fees incurred by the Driver Defendants that were directly related to the arbitration issue will generally be awarded; all other fees will not.

### Fees Incurred in Connection with the Initial Motion to Dismiss

As set forth previously, this case was filed in October 2014 and the initial response was a motion to dismiss based on lack of diversity jurisdiction because of the numerous John Doe defendants.  (Dkt. No. 22.)  This motion, which was an effort to get the entire case dismissed, appears to have little, if anything, to do with the Driver Defendants and nothing at all to do with their arbitration agreements.  Under these circumstances, it would not be appropriate to award the fees incurred in connection with the initial motion to dismiss.

### Fees Incurred in Connection With the Arbitration Issue

Even if we indulge the fiction that England did not know whether there were binding arbitration agreements in the Driver Defendants' contracts when the suit was filed, it is undeniable that England was apprised of that fact in the Answers filed by the Driver Defendants

9

on June 25, 2015.  In each of the Answers filed by the individual Defendant Drivers the Third

Affirmative Defense includes the following language:

> All of C.R. England's claims in this case against [defendant] must be dismissed
> with C.R. to pay for the attorneys' fees incurred in defending against these claims,
> because, upon information and belief, those claims are subject to and governed by
> a written arbitration agreement which, among other things (i) is governed by the
> Federal Arbitration Act, and (ii) requires that these claims (a) "shall be submitted
> to and resolved by final and binding arbitration" in [defendant's] "state of
> residence", and with (b) "[a]ll ordinary and reasonable administrative expenses of
> the arbitration, including fees for a single arbitrator, hearing room expenses,
> travel expenses of the arbitrator, the AAA representatives (if applicable), and any
> witnesses produced at the arbitrator's specific request and not otherwise called by
> a party, [to] be paid completely by [C.R. England].

(Dkt. Nos. 34, 35, 36, 37.)

Thereafter, throughout the month of June 2015 and into July, England was further made

aware of the arbitration agreements through England's counsel working together with defense

counsel to prepare the Rule 26(f) report, which unambiguously provides in section 1(1)(iv) that

"all claims against the Driver Defendants must be dismissed, because [among other things] they

are subject to binding mandatory arbitration."  (Dtk. No. 44, Rule 26(f) Attorneys' Planning

Meeting Report.)  The Report was filed by England's counsel on July 13, 2015.  On that same

day, England's counsel had a telephone conversation with Mr. Weatherwax in which the

arbitration agreements were discussed in some detail.  While the two attorneys have some

disagreement about what was said, there is no dispute that Mr. Weatherwax asked Mr. Rice to

dismiss the case against the Driver Defendants and Mr. Rice said he would need to discuss the

matter with his client.

According to Mr. Weatherwax, he also stressed in that phone call that if England did not

agree to voluntarily dismiss the case against the Driver Defendants, he would "file a motion to

dismiss and seek attorneys' fees , costs and expenses."  (Dkt. No. 51, Exhibit 4, Email from M.

Weatherwax at 2.)  This is consistent with the third affirmative defense in the Driver Defendants'

Answers.

    After the July phone call, England did nothing to respond to Mr. Weatherwax's demands.

Therefore, Mr. Weatherwax filed his Rule 12 (c) Motion for Judgment on the Pleadings, on

August 25, 2015.  At this juncture, Mr. Rice, for the first time communicated his willingness to

dismiss the Driver Defendants from the lawsuit.  This offer was met by Mr. Weatherwax's

agreeing to a Rule 41(a)(2) dismissal without any fees, only if England would agree not to seek

arbitration against the Driver Defendants.  Alternatively, Mr. Weatherwax said he would be

willing to stipulate to a Rule 41(a)(2) dismissal only on the condition that England pay all

defense fees incurred in the case.

    Under these facts, then, England was clearly on notice in mid July that Mr. Weatherwax

would file a motion to dismiss if England did not voluntarily dismiss the case against the Driver

Defendants.  By failing to act, England caused Mr. Weatherwax to file his motion and the

accompanying memorandum in support.  Therefore, at a minimum, England should be required

to pay for the costs incurred in connection with the Rule 12 (c) motion and the initial

memorandum in support.

    As for the rest of the fees incurred by the Driver Defendants in this case, including those

incurred in prosecuting their motion for judgment on the pleadings, it is not reasonable to

condition the court's order on the payment on *all* of these fees, the majority of which were

caused by Mr. Weatherwax's insistence that England either agree to never seek arbitration against the Driver Defendants or to pay all fees to that point in the lawsuit.  That request went too far.  At that point, Mr. Weatherwax had clearly been informed that England would immediately dismiss the case against the Driver Defendants, an offer which, if accepted by Mr. Weatherwax, would have eliminated virtually all of the legal briefing and oral arguments that followed and which led to this Memorandum Decision and Order.

In accordance with the foregoing discussion, the court finds that the following attorneys fees and costs are related to, and caused by, England's improper filing of this lawsuit against the Driver Defendants and should therefore be awarded to the Driver Defendants as a condition of the dismissal of this case against the drivers pursuant to England's motion:

> (1)   The fees incurred by the Driver Defendants in connection with the filing of their Answers;
>
> (2)   The fees incurred in connection with the Driver Defendants' Rule 12 (c) motion for judgment on the pleadings and the initial memorandum in support; and
>
> (3)   The fees incurred in the preparation of the indicated portions of the following memoranda:
>
>> (a)    The Driver Defendants' Rule 12 (c) Reply Memorandum (Dkt. No. 56, pp. 8-11, Parts V & VI, regarding fees);  and
>>
>> (b)    The Driver Defendants' Response to England's Motion to Dismiss (Dkt. No. 57, pp. 7-10, Part III, regarding fees).

Within 10 days from the date of this Order, the Driver Defendants shall file with the Court the fees and costs they claim were reasonably incurred in the three categories listed above. Barring a contest over reasonableness, England is ordered to pay the fees and costs identified by the Driver Defendants.

## **SUMMARY**

England's Rule 41(a)(2) motion is GRANTED, with prejudice, to permit arbitration if England so elects. The Driver Defendants' Rule 12 (c) Motion for Judgment on the Pleadings is considered MOOT and therefore DENIED. The Driver Defendants are awarded fees as set forth above.

It is so ORDERED.

DATED this 7th day of January, 2016.

_____
Dee Benson
United States District Judge